UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph P.,[1]

                    Plaintiff,              Court File No.  18-cv-291 (ECT/LIB)

      v.                         **REPORT AND RECOMMENDATION**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

                    Defendant.

Plaintiff, Joseph P. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 13, 16], and the Court took the matter under advisement on the written submissions.

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 13], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.

## I.  Procedural History

On May 4, 2010, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 36).[2] Plaintiff alleged that his disability began on March 26, 2008. (Tr.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by his name only his first name and last initial are provided.

36). The Commissioner initially denied Plaintiff's present claims on August 5, 2010, and again, upon reconsideration, on October 21, 2010. (Tr. 36). On December 9, 2010, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 36).

Administrative Law Judge Paul Gaughen (hereinafter "ALJ") conducted a hearing on June 11, 2012. (Tr. 36). Plaintiff was represented by legal counsel at the administrative hearing. (Tr. 36). Plaintiff, his wife, and an independent vocational expert, Jesse Ogren, ("IVE Ogren") testified at the hearing. (Tr. 36, 79). On July 27, 2012, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 33–49). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 49).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on December 1, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On January 31, 2018, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 13, 16], and the Court took the matter under advisement on the written submissions.

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 12], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 52 exhibits. (See, Administrative Record [Docket No. 12]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–6), thus making the ALJ's decision effectively the final decision of the Commissioner.

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision [through the ALJ], the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2012. (Tr. 38). This finding is not in dispute.

Thereafter, ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since March 26, 2008, Plaintiff's alleged disability onset date. (Tr. 38). This finding is not in dispute. The Court will refer to the period of time between that date Plaintiff last engaged

in substantial gainful activity and the date through which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: schizoaffective disorder." (Tr. 38). Plaintiff does not challenge this finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 38). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 12.04. (Tr. 38–40). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: regular work in the course of a regular workweek if it involves clear cut and simple directions and procedures to be followed for new learning; however, if there are detailed instructions (i.e. more than four or five steps), he can apply previously obtained learning because there has been no head injury. He needs to have a well-laid out routine with limited need to adapt to significant changes in the work setting. He cannot respond to unusual work stressors but is capable of handling normal work stressors. He should have a job where he has limited need to have social interaction with new and unfamiliar persons. In settings like that, the social discourse would have to be perfunctory and limited only. In the work environment, in general, he should not have duties where he has to have a great deal of social interaction, such as being a project manager. Duties along those lines can be handled even if it involved retail public. He should not be assigned to work where there are unprotected heights or operating dangerous industrial equipment.

(Tr. 40). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms;" however, the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC determination. (Tr. 42). Plaintiff does not challenge this credibility finding by the ALJ.

The ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 47). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (Tr. 47). Relying upon testimony from independent vocational expert Jesse Ogren, ("IVE Ogren"), the ALJ specifically found that among the occupations Plaintiff would be able to perform were laundry worker of which there are 220,000 positions in the national economy and 3,500 positions in the economy of Minnesota; cleaner of which there are 1,500,000 positions in the national economy and 44,000 positions in the economy of Minnesota; and stuffer of which there are 240,000 positions in the national economy and 1,000 positions in the economy of Minnesota. (Tr. 47–48). Other than an implicit challenge based on Plaintiff's challenge of the ALJ's RFC finding, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 48–49).

## IV. Analysis

Plaintiff asserts one general overarching issues on his appeal of the ALJ's decision: "The ALJ's findings regarding [Plaintiff's] residual functional capacity [RFC] are not based upon substantial evidence on the record as a whole, and therefore cannot support a denial of

[Plaintiff's] claim for benefits." (See, Plf.'s Mem., [Docket No. 14], at 15). Specifically, Plaintiff contends that the ALJ erred in discounting the opinions of Yvonne Eissinger, Clinical Nurse Specialist (hereinafter "CNS Eissinger"), and Dr. Travis Hinze (hereinafter "Dr. Hinze"). (See, Id.). Plaintiff also contends that the ALJ's "[a]dotping the [opinions of] non-treating, non-examining State Agency psychological consultants, in light of the other evidence of record, is contrary to the law of this Circuit." (See, Id. at 16). The Commissioner contends that she is entitled to summary judgment, arguing that each of Plaintiff's arguments is unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (Def.'s Mem. [Docket No. 17]).

### A. Weight Allocated to Opinion Evidence

Plaintiff first argues that the ALJ erred by improperly discounting the opinions of Dr. Hinze and CNS Eissinger. (Plf.'s Mem., [Docket No. 14], at 15–19).

"[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (internal quotation marks omitted). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to

substantial weight and should not ordinarily be disregarded without good reason. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)).

An ALJ may also discount or even disregard a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces him otherwise. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also, SSR 96-5p (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations).

When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that the ALJ explain his or her reasons for doing so. See, 20 C.F.R. § 404.1527(c)(2).

### 1. Dr. Hinze

On June 25, 2010, Plaintiff reported to Dr. Hinze for a psychological evaluation upon referral from the Social Security Disability Determination Bureau in reference to schizoaffective disorder and depression. (Tr. 297–302). Dr. Hinze published his report from that evaluation on July 1, 2010. (Tr. 297–302).

In his July 1, 2010, report, Dr. Hinze opined that "[b]ased on clinical observations, interview with the [Plaintiff], and a review of referral information" his diagnostic impression was that Plaintiff suffered from "Schizoaffective Disorder, bipolar type." (Tr. 301). As for functional limitations, Dr. Hinze opined that while he "doubt[ed]" Plaintiff had "any major problems in" his capacity to understand, remember, and follow instructions, Dr. Hinze "suspect[ed]" Plaintiff "would have difficulty in" his ability to sustain attention and concentration, as well as, "significant difficulty" in his capacity to carry out work like tasks with a reasonable persistence or pace; his capacity to respond to appropriately brief, superficial contact with supervisors and coworkers; and his capacity to tolerate stresses in an entry level workplace. (Tr. 302).

After discussing Dr. Hinze's July 1, 2010, opinion and psychological evaluation report, the ALJ expressly assigned the opinion "some weight" noting that in formulating his opinion Dr. Hinze "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [Plaintiff], and seemed to uncritically accept as true most, if not all, of what the [Plaintiff] reported." (Tr. 44–46).[3] The ALJ noted that as he had "explained elsewhere in [his]

---

[3] As noted above, the diagnosis of schizoaffective disorder is not at issue, rather, what is at issue is what, if any, limitations this places on Plaintiff's ability to function in the workplace.

decision, there exist good reasons for questioning the reliability of the [Plaintiff's] subjective complaints." (Tr. 46).

Plaintiff argues that the ALJ committed reversible error by assigning Dr. Hinze's July 1, 2010, opinion only "some weight" because although "[t]he ALJ stated that he was discounting Dr. Hinze's opinion because Dr. Hinze apparently relied quite heavily on the subjective report of symptoms and limitations provided by the" Plaintiff "and seemed to uncritically accept as true most, if not all, of what the" Plaintiff reported, Plaintiff contends that "Dr. Hinze made it clear that he relied on his own clinical observations and a review of records provided to him by the Social Security Administration." (Plf.'s Mem., [Docket No. 14], at 17) (quotations omitted). According to Plaintiff, the record reflects that "Dr. Hinze performed a detailed and thorough examination of [Plaintiff], and expressly stated that his conclusions were based on 'on [sic] clinical observations, interview with [Plaintiff], and review of referral information . . . .'" (Id.). Plaintiff also argues that the ALJ committed reversible error in assigning only "some weight" to Dr. Hinze's opinion because the ALJ "fail[ed] to acknowledge that even the non-treating, non-examining State Agency psychological consultants opined that Dr. Hinze's opinion was consistent with the evidence of record." (Id.).

The Court's review of the record indicates that the ALJ's decision that "it appeared that [Dr. Hinze] apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [Plaintiff]" (emphasis added) is supported by substantial evidence in the record and within the ALJ's available "zone of choice." Therefore, the ALJ's reason for discounting the July 1, 2010, opinion of Dr. Hinze as to the Plaintiff's functional limitations accurately reflect the record and constitute good reason for discounting said opinion. An ALJ may properly give less weight to the opinion of a treating medical provider when the opinion is based on the

claimant's subjective complaints rather than the objective medical evidence. <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 749 (8th Cir. 2005); <u>see</u>, <u>Kirby v. Astrue</u>, 500 F.3d 705, 709 (8th Cir. 2007).

A review of Dr. Hinze's July 1, 2010, opinion, and the report upon which it is based, demonstrate that Dr. Hinze relied, at least in large part, on Plaintiff's subjective statements in reaching his July 1, 2010, opinion as to Plaintiff's potential workplace limitations. (<u>See</u>, Tr. 298–302). Although Dr. Hinze received some of Plaintiff's previous medical records, the only portion of his report which appears to be based on those previous medical records is the section of the report discussing Plaintiff's preexisting conditions. (<u>See</u>, Tr. 298). The remainder of Dr. Hinze's report appears to be based on subjective information provided by Plaintiff. For example, although the "Chief Complaint" section of Dr. Hinze's report references CNS Eissinger's "previous diagnosis of schizoaffective disorder," the overwhelming majority of that section discusses Plaintiff's subjective complaints to Dr. Hinze, and the "Functional Information" section of Dr. Hinze's report discusses <u>only</u> Plaintiff's subjective comments. (Tr. 298, 301).

In any event, it is not for this Court to determine in fact whether or not Dr. Hinze's July 1, 2010, opinion "relied quite heavily on the subjective report of symptoms and limitations provided by" Plaintiff. This Court need only determine whether that determination by the ALJ is supported by substantial evidence in the record and within the available "zone of choice." The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994); <u>see</u>, <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009); <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to

support the opposite conclusion. <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

Although Plaintiff is correct that some statements in Dr. Hinze's report, including his statement that his diagnosis was based on "clinical observations, interview with [Plaintiff], and review of referral information," indicate that portions of his report were based in part on objective observations, there is also substantial evidence that Dr. Hinze's July 1, 2010, opinion regarding Plaintiff's functional limitations was based primarily on Plaintiff's subjective complaints.[4] This Court, however, cannot reverse the decision of the ALJ simply because some evidence in the record also supports an opposite conclusion. <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

On the record now before the Court, Dr. Hinze's report provides substantial evidence to support the ALJ's decision that Dr. Hinze's opinion as to Plaintiff's functional limitations was based, in large part, on Plaintiff's solely subjective statements. Therefore, the ALJ's reason for discounting the July 1, 2010, opinion of Dr. Hinze accurately reflect the record and constitute good reason for discounting said opinion. <u>See</u>, <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 749 (8th Cir. 2005); <u>Kirby v. Astrue</u>, 500 F.3d 705, 709 (8th Cir. 2007).

Additionally for the reasons stated below, the ALJ's decision to discount the July 1, 2010, opinion of Dr. Hinze was supported by other substantial evidence in the record not specifically delineated by the ALJ.

---

[4] As previously noted, the only portion of Dr. Hinze's report which appears to be based on previous medical records is the section of the report discussing Plaintiff's preexisting conditions; the remainder of Dr. Hinze's report appears to be based on subjective information provided by Plaintiff. For example, although the "Chief Complaint" section of Dr. Hinze's report references CNS Eissinger's "previous diagnosis of schizoaffective disorder," the overwhelming majority of that section discusses Plaintiff's subjective complaints to Dr. Hinze, and the "Functional Information" section of Dr. Hinze's report is based <u>solely</u> on Plaintiff's subjective comments. (Tr. 298, 301).

For example, on the record now before the Court, Dr. Hinze's physiological evaluation of Plaintiff, upon which the July 1, 2010, report and opinion are based, appears to be the <u>only</u> instance in which Dr. Hinze met with Plaintiff. An ALJ may discount the weight to be given to the opinion of a treating physician where it is based on only a relatively short term treating relationship. <u>Chapman v. Barnhart</u>, 87 F. App'x 598, 600 (8th Cir. 2004) (citing <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 720 (8th Cir. 2001)). It is not per se error for an ALJ to discount a medical opinion where the physician saw Plaintiff only once. <u>See</u>, <u>Conklin v. Barnhart</u>, 206 F. App'x 633, 636 (8th Cir. 2006).

In fact, because Dr. Hinze only saw Plaintiff on a single occasion, Dr. Hinze is not considered a treating physician whose opinion is entitled to deferential treatment by the ALJ; rather Dr. Hinze is considered a consulting or examining physician. <u>See</u>, <u>Conklin v. Barnhart</u>, 206 F. App'x 633, 636 (8th Cir. 2006) (citing <u>Cantrell v. Apfel</u>, 231 F.3d 1104, 1107 (8th Cir. 2000)); <u>Doyal v. Barnhart</u>, 331 F.3d 758, 763 (10th Cir. 2003); <u>Hunter v. Astrue</u>, No. 8-cv-5245 (MJD/RLE), 2009 WL 3242021, at *24 (D. Minn. Oct. 2, 2009).

Additionally, the record now before the Court indicates that over the course of the adjudication period Plaintiff unilaterally discontinued taking prescribed medications on several occasions; refused additional medications to manage his symptoms; neglected to follow prescribed treatment plans or follow-up with providers as directed, including abruptly and unilaterally withdrawing from therapy in November 2008; and relied on a conservative course of treatment. (Tr. 336–37, 356–357, 361–362, 374–375). The refusal of other treatment or medication options and a consistent course of conservative treatment in the record as a whole indicates a level of debilitation less than the high level of functional limitations outlined in the opinion of Dr. Hinze based principally on the subjective complaints expressed by Plaintiff during

his only office visit with Dr. Hinze. See e.g., Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); see also, McDade v. Astrue, 720 F.3d 994, 1001 (8th Cir. 2013). Plaintiff's refusal of other medication options during the course of treatment in the record as a whole is inconsistent with the subjective complaints made on a single occasion to Dr. Hinze and provides another alternative basis upon which Dr. Hinze's opinion could be discounted. "[A] claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion, and therefor can be considered in determining whether to give that opinion controlling weight." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original); see, Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004).

Furthermore, the record now before the Court indicates that Plaintiff's symptoms and mental health improved with medication, as well as, when he was regularly meeting with a therapist. (Tr. 289, 291, 293, 336, 340, 367–375). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling[,]" and therefore, Plaintiff's demonstrated improvement when meeting with a therapist, we well as, his improvement when medicinally compliant is inconsistent with the highly debilitating nature of Dr. Hinze's July 1, 2010, opinion concerning Plaintiff's functional limitations. See, Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

As such, the ALJ decision to assign only "some weight" to Dr. Hinze's July 1, 2010, opinion because it was based primarily on Plaintiff's subjective complaints was not error because it was itself supported by substantial evidence in the record. Because the ALJ had a proper basis to discount the opinion of Dr. Hinze, the ALJ's decision to giver lesser weight to the opinion of Dr. Hinze was within the available zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d

15

at 1115. For the reasons stated above, the ALJ's decision to discount the opinions of Dr. Hinze was supported by substantial evidence in the record as a whole.

Plaintiff next argues that the ALJ committed reversible error in assigning only "some weight" to Dr. Hinze's opinion because the ALJ "fail[ed] to acknowledge that even the non-treating, non-examining State Agency psychological consultants opined that Dr. Hinze's opinion was consistent with the evidence of record." (Plf.'s Mem., [Docket No. 14], at 17).

On August 2, 2010, the State Agency psychological consultant, S. Hill, noted that "Dr. Hinze provided [a medical opinion]" and that the medical opinion was "given weight and consistent [with] other information in" the medical record. (Tr. 322). Although S. Hill noted that Dr. Hinze's medical opinion was consistent with other evidence in the record and agreed with the schizoaffective disorder diagnosis, S. Hill's opinion on Plaintiff's functional limitations differed from Dr. Hinze's opinion on Plaintiff's functional limitations. S. Hill opined that Plaintiff would be "moderately limited" in his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to work in coordination with or proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to interact appropriately with the general public; and his ability to respond appropriately to changes in the work setting. (Tr. 320–321). However, S. Hill opined that Plaintiff was "not significantly limited" relative to the following areas: his ability to remember locations and work-like procedures; his ability to understand and remember very short and simple instructions; his ability to carry out very short and simple instructions; his ability to maintain attention and concentration for extended periods; his ability to perform activities with a schedule, maintain regular attendance, and be punctual

16

within customary tolerances; his ability to sustain an ordinary routine without special supervision; his ability to make simple work-related decisions; his ability to ask simple questions or request assistance; his ability to accepts instructions and respond to criticism from supervisors; his ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes; his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; his ability to be aware of normal hazards and take appropriate precautions; his ability to travel in unfamiliar places or use public transportation; and his ability to set realistic goals or make plans independently of others. (Tr. 320–321). S. Hill further opined that "[w]hile it is expected that [Plaintiff] would be unable to complete complex tasks," he "would be able to complete simple tasks on a sustained basis without special considerations preferably in an environment with limited social interaction." (Tr. 322).

The Court notes that Plaintiff has failed to provide, and this Court does not find, any caselaw or statutory authority supporting Plaintiff's implied argument that an ALJ is required to assign controlling weight to a medical consulting opinion as to functional limitations when a State Agency consultant found the underlying diagnosis in the medical opinion to be consistent with the record. Rather, it is the function of the ALJ and the ALJ alone to weigh conflicting evidence and to resolve disagreements among physicians regarding what limitations of work abilities exist due to any particular underlying diagnosis. Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007).

In the present case, the ALJ ultimately assigned "great weight" to the opinion of the State Agency psychological consultant's functional limitations opinion that Plaintiff "was capable of completing simple tasks on a sustained basis without special considerations preferably in an environment with limited social interaction." (Tr. 46). There is no indication in the record,

17

however, that the ALJ adopted the State Agency psychological consultant's non-medical notation that Dr. Hinze's July 1, 2010, diagnostic opinion was "consistent [with] other information in file" as meaning the State Agency consultant was concurring in the medical consulting physician's functional limitations opinion.

Accordingly, the Court finds that the ALJ's decision to discount the opinion of Dr. Hinze was supported by substantial evidence in the record as a whole.

## 2.  CNS Eissinger

CNS Eissinger is a Clinical Nurse Specialist who, it appears, has been treating Plaintiff since September 2006. (Tr. 296).

October 1, 2010, CNS Eissinger completed a "Medical statement concerning depression for Social Security disability claim" form. (Tr. 344–347). In that form, CNS Eissinger opined that Plaintiff had "mild" restriction of activities of daily living and "marked" difficulty in maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete task in a timely manner, as well as, repeated episodes of deterioration or decompensation in work or work-like settings. (Tr. 344–345). CNS Eissinger further opined that Plaintiff was "moderately impaired" in his ability to remember locations and work-like procedures, to make simple work related decisions, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; "markedly impaired" in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities with a schedule, maintain regular attendance, and be punctual with customary tolerances; to work in coordination with and proximity with others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. (Tr. 345–346). Lastly, in response to the question as to whether Plaintiff was "totally precluded from one and all work/employment activity," CNS Eissinger opined "yes. Due to illness [Plaintiff] has great difficulty functioning in social situation" and "there have been several episodes of decompensation in the last year." (Tr. 346).

After discussing CNS Eissinger's treatment notes and medical statement, the ALJ expressly assigned the medical statement only "some weight" noting that CNS Eissinger's "treatment notes do not support the level of symptoms required to find the [Plaintiff] disabled" and that "even the [Plaintiff] admitted that his problems are situational related." (Tr. 46). The ALJ also noted that CNS Eissinger "is not an acceptable medical source." (Tr. 46).

"Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two main groups: medical sources and non-medical sources." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 416.902). "Social Security Ruling 06-3p clarifies how the SSA considers opinions from sources who are not what the SSA defines as 'acceptable medical sources.'" Pogue v. Colvin, No. 13-cv-4216, 2014 WL 5781141, at *18 (W.D. Mo. Nov. 6, 2014). CNS Eissinger as a clinical nurse specialist is considered an "other medical source." See, Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Pogue v. Colvin, No. 13-cv-4216, 2014 WL 5781141, at *18 (W.D. Mo. Nov. 6, 2014).

Evidence provided by "other medical sources," such as CNS Eissinger, must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the other evidence in the record. See, Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.") (citation omitted).

Only accepted medical sources can provide medical opinions. Pogue, 2014 WL 5781141, at *18. "Information from theses other sources," such as CNS Eissinger, "cannot establish the existence of a medically determinable impairment, according to SSR 06-3p"; however, "information from such other sources may . . . provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (internal quotation omitted).

Plaintiff first argues that the ALJ erred by assigning diminished weight to the medical statement of CNS Eissinger because the ALJ substituted his own medical opinion for that of CNS Eissinger. (Plf.'s Mem., [Docket No. 14], at 17–18). Plaintiff's argument here, however, appears to be based on a mischaracterization of the record. In assigning weight to CNS Eissinger's Medical Statement, the ALJ did not proffer his own medical opinion; rather, the ALJ noted that the highly debilitating nature of CNS Eissinger's medical statement was unsupported by CNS Eissinger's own treatment notes.

Plaintiff also appears to argue that the ALJ erred by not assigning more weight to CNS Eissinger's opinion. As already noted, CNS Eissinger is a clinical nurse specialist, and therefore, she is an "other medical source" as defined by the Social Security Administration.

As an "other medical source," CNS Eissinger's medical statement is not given the initial deference of a treating physician but can serve to illustrate the severity of Plaintiff's impairment. See, Sloan, 499 F.3d at 888. Social Security Ruling ("SSR") 06–03p provides six factors for the ALJ's consideration of opinion evidence from "other" sources: (1) how long and how frequently the source has seen the plaintiff; (2) how consistent the opinion is with other evidence on the record; (3) the amount of evidence provided to support the opinion; (4) how well the opinion is explained; (5) whether the source has a relevant specialty or area of expertise; and (6) any other factors. Sloan, 499 F.3d at 889. "However, '[n]ot every factor . . . will apply in every case [and] [t]he evaluation of an opinion from an other source depends on the particular facts of the case.'" Dew v. Comm'r of Soc. Sec., No. 9-cv-1986, 2010 WL 3033779, at *19 (D. Minn. July 9, 2010), (alteration in original) report and recommendation adopted, 2010 WL 3033772 (D. Minn. July 26, 2010).

In the present case, the ALJ fulfilled his responsibility with respect to CNS Eissinger's medical statement evidence. (Tr. 43–46). In his decision, the ALJ stated CNS Eissinger's highly debilitating medical statement was assigned only "some weight" due to its inconsistencies with CNS Eissinger's own prior treatment notes.

The Court's review of the record indicates that the ALJ's conclusion that CNS Eissinger's highly debilitating medical statement was inconsistent with her own treatment notes is supported by substantial evidence in the record. Despite the debilitating nature of CNS Eissinger's medical statement, her own prior treatment notes indicate that on several occasions, when medically compliant, Plaintiff reported improvements in his symptoms. (Tr. 289, 291, 293, 336, 340). Additionally, on several occasions CNS Eissinger noted that Plaintiff was alert and oriented times three; had short term memory, long term memory, and concentration intacted in

routine conversation; and had normal speech patter, thought process, affect, and mood. (Tr. 291, 293, 336, 340). On one occasion, when Plaintiff had unilaterally reduced his medication, Plaintiff also reported improved symptoms even though he was not compliant with his medications. (Tr. 298). These occurrences reflected in CNS Eissinger's own treatment notes are inconsistent with the highly debilitating nature of CNS Eissinger's October 1, 2010, medical statement.

Moreover, the ALJ also noted that CNS Eissinger's medical statement was entitled to only "some weight" because her treatment notes indicated many of Plaintiff's symptoms were situational in nature. Plaintiff himself reported that he thought his symptoms were situational in nature, and on at least one occasion, he denied an offered increase in his medication noting that he thought his symptoms would improve when the situation at issue changed. (Tr. 293). Plaintiff's reported increase in symptoms also correspond to situational stressors in CNS Eissinger's treatment notes, including his "9 year old daughter [being] diagnosed with cancer;" his "[s]econd daughter, age 5, ha[ving] autism"; and his having to leave his previous job as a pharmacy technician due to a loss of child daycare. (Tr. 287, 293). The situational nature of Plaintiff's mental health impairments undermines the weight to be assigned to CNS Eissinger highly debilitating medical statement. See, Dunahoo v. Apfel, 241 F.3d 1033, 1039–40 (8th Cir. 2001); Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006); Christina L. v. Berryhill, No. 17-cv-4627 (BRT), 2019 WL 917176, at *3 (D. Minn. Feb. 25, 2019); Kimberly S. v. Berryhill, No. 17-cv-5219 (KMM), 2019 WL 1318353, at *6 (D. Minn. Mar. 22, 2019); Engquist v. Berryhill, No. 16-cv-3951 (TNL), 2018 WL 1413460, at *20 (D. Minn. Mar. 21, 2018).

Thus, it was within the ALJ's discretion to conclude that CNS Eissinger's medical statement was entitled to only "some weight." See, Fleck v. Colvin, 956 F. Supp. 2d 1014, 1031 (N.D. Iowa 2013) ("In determining the weight afforded to 'other source' evidence an 'ALJ has

more discretion and is permitted to consider any inconsistencies found within the record.'") (citing Raney v. Barnhart, 396 F.3d 1007, 1010(8th Cir. 2005)); Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015);  Sloan, 499 F.3d at 888–89.

Additionally, the record now before the Court, which includes CNS Eissinger's own treatment notes, indicates that over the course of the adjudication period Plaintiff unilaterally discontinued taking prescribed medications on several occasions; refused additional medications to manage his symptoms; neglected to follow prescribed treatment plans or follow-up with providers as directed, including abruptly and unilaterally withdrawing from therapy in November 2008; and relied on a conservative course of treatment. (Tr. 336–37, 356–357, 361–362, 374–375). The refusal of other treatment or medication options and a consistent course of conservative treatment indicates a level of debilitation in the record as a whole less than the highly debilitating nature of CNS Eissinger's medical statement. See e.g., Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); see also, McDade v. Astrue, 720 F.3d 994, 1001 (8th Cir. 2013). "[A] claimant's noncompliance can constitute evidence that is inconsistent with a . . . medical opinion, and therefor can be considered in determining whether to give that opinion . . . weight." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original); see, Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004). Indeed, the record now before the Court, again including CNS Eissinger's own treatment notes, indicates that Plaintiff's symptoms and mental health improved with medication, as well as, when he was meeting with a therapist. (Tr. 289, 291, 293, 336, 340, 367–375). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." See, Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

Accordingly, the Court finds that the ALJ's decision to discount the medical statement of CNS Eissinger was supported by substantial evidence in the record as a whole.

## B. State Agency Consultant

Plaintiff next appears to argue that the ALJ's RFC determination is not supported by substantial evidence because the ALJ afforded "great weight" to the functional limitation conclusions of the State Agency psychological consultant.[5] Plaintiff does not specifically articulate any issue with the State Agency psychological consultant's opinions. His only objection appears to be that they are in fact opinions proffered by a non-examining State Agency psychological consultant, and therefore, they should not constitute substantial evidence in support of the ALJ's RFC determination. The Court finds this argument unpersuasive.

Although the opinions of non-treating State Agency consultants may not constitute substantial evidence on their own, an ALJ does not err when he relies on the opinions of State Agency consultants when he also considers them in light of the medical record as a whole. See,

---

[5] As previously noted, on August 2, 2010, the State Agency psychological consultant, S. Hill, opined that Plaintiff would be "moderately limited" in his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to work in coordination with or proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to interact appropriately with the general public; and his ability to respond appropriately to changes in the work setting. (Tr. 320–321). However, S. Hill also opined that Plaintiff was "not significantly limited" in his ability to remember locations and work-like procedures; his ability to understand and remember very short and simple instructions; his ability to carry out very short and simple instructions; his ability to maintain attention and concentration for extended periods; his ability to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; his ability to sustain an ordinary routine without special supervision; his ability to make simple work-related decisions; his ability to ask simple questions or request assistance; his ability to accepts instructions and respond to criticism from supervisors; his ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes; his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; his ability to be aware of normal hazards and take appropriate precautions; his ability to travel in unfamiliar places or use public transportation; and his ability to set realistic goals or make plans independently of others. (Tr. 320–321). Based on those functional limitations, S. Hill further opined that "[w]hile it is expected that [Plaintiff] would be unable to complete complex tasks," he "would be able to complete simple tasks on a sustained basis without special considerations preferably in an environment with limited social interaction." (Tr. 322).

Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014). Such is the circumstance of the present case.

While the ALJ relied on the State Agency consultant opinions, he also considered the medical record as a whole, and in fact, based on other medical evidence in the record, the ALJ actually imposed somewhat greater restrictions in his RFC determination than those recommended by the State Agency consultant. (See, Tr. 40, 320–322, 354–355). It is evident from the record that the ALJ did not rely on the State Agency consultant opinions as the sole evidence for reaching his RFC determination. Because the ALJ conducted an independent review of the evidence in the record as a whole, the ALJ permissively assigned "great weight" to the State Agency psychological consultant's functional limitation opinions, and therefore, it was not error for him to assign "great weight" to those opinions. See, Turpin, 750 F.3d at 994–95.

## V.  Conclusion

The Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Administration Act was supported by substantial evidence in the record as a whole.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 13], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.

Dated:  May 13, 2019                                    s/Leo I. Brisbois
                                                        Hon. Leo I. Brisbois
                                                        United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).